KNOTT COUNTY BOARD OF EDU-
CATION, Robert Pollard, Harold
Combs, Kimberly King, Lantre Combs,
Rex Slone, Dennis Jacobs, Randy
Combs, Anna Dixon, Patricia Slone
Hackworth, Charles Jones, Sharon
Smith, and Diane Hall, Appellants,

v.

Grace PATTON, Appellee.

No. 2012–SC–000139–DG.

Supreme Court of Kentucky.

Dec. 19, 2013.

Michael J. Schmitt, Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, for appellants.

Adam Peter Collins, Collins & Collins, PSC, Nicholas C.A. Vaughn, Law Office of Nick Vaughn, for appellee.

Opinion of the Court by Justice VENTERS.

Appellants, Robert Pollard, Harold Combs, Kimberly King, Lantre Combs, Rex Slone, Dennis Jacobs, Randy Combs, Anna Dixon, Patricia Slone Hackworth, Charles Jones, Sharon Smith, Diane Hall and the Knott County Board of Education, petitioned this Court for discretionary review, arguing that the Court of Appeals improperly reversed the summary judgment entered in their favor in the Knott Circuit Court. The controversy we now address arose when the foreign language taught at Knott County Central High School was switched from French to Spanish. As a consequence of that curriculum change, Appellee, Grace Patton, who served as the high school's French teacher, lost her job. She then brought suit against the Appellants in the Knott Circuit Court.

Appellants argue that the Court of Appeals erred when it invoked, *sua sponte*, KRS 61.102, Kentucky's whistleblower act, as the rationale supporting Patton's claim that her job had been improperly terminated. Appellants also claim that the Court of Appeals erred in its conclusion that the individually-named Appellants were not entitled to qualified official immunity.

We reverse the Court of Appeals and reinstate the summary judgment entered by Knott Circuit Court because we conclude that Appellee did not state a claim under the whistleblower act and that, under the facts as alleged, she had no claim under the whistleblower act. We also conclude that the individual Appellants were engaged in the performance of discretionary duties covered by the qualified official immunity doctrine. Having determined that the trial court properly granted summary judgment in this matter, we need not address Appellants' argument that Appellee failed to exhaust her administrative remedies.

## I. FACTUAL AND PROCEDURAL HISTORY

During her sixth year of teaching French at Knott County Central High

School, Patton received a letter of reprimand from Appellant Robert Pollard, the high school's principal. The letter asserted that Patton had committed the following acts of misconduct: 1) before a classroom full of high school students she referred to Pollard as a "twit"; 2) she missed work using three days of sick leave when she was not actually ill; and 3) she gave a final examination that was not sufficiently rigorous and was not in the proper format. A copy of the written reprimand was placed in Patton's personnel file.

About two months later, Patton protested the letter of reprimand by sending Pollard a letter demanding its removal from her personnel records. She asserted in her demand that the reprimand was "null and void" because it violated the collective bargaining agreement between the Knott County Education Association and the Knott County Board of Education (Board), conflicted with "directives" from the Kentucky Department of Education, and incorrectly interpreted the sick-leave-for-teachers provision of KRS 161.155. Patton sent a copy of the letter to Appellant Harold Combs, superintendent of the Knott County school system. Shortly thereafter, Pollard informed Patton that he would ask the school's Site–Based Decision–Making Council (SBDMC)[1] to change the foreign language component of the school curriculum from French to Spanish. Patton was a member of the SBDMC, and later that day she received notice of a special SBDMC meeting.

At a special SBDMC meeting, Pollard offered his recommendation that the school teach Spanish instead of French. Pollard noted that his recommendation was based, in part, upon a survey of student preferences. The council deferred action on the issue until its next regular meeting, which was scheduled for the following week. At that meeting, a majority of the SBDMC members voted in favor of Pollard's recommendation to eliminate the French classes and to teach Spanish instead.

In due course, Patton received a letter from Superintendent Combs informing her that because of the curriculum change, her teaching position was no longer available and that she was "suspended" from her employment. The letter also advised that she would be called back to work if a position meeting her certifications became available in the Knott County School District. Although she was certified to teach social studies in addition to French, Patton complains that she was not contacted when a position for a social studies teacher in the school district later became available.

Patton, with the assistance of her attorney, complained to the Knott County Board of Education[2] that the SBDMC had not followed the proper procedures for changing the curriculum from French to Spanish and that the decision to quit teaching French was actually done as a means of retaliation against her. She also asked the SBDMC to reconsider its decision. When her request was denied, she appealed the decision to the school board without success.

1. Appellants Patricia Slone Hackworth, Charles Jones, Sharon Smith, and Diane Hall were, at that time, members of the SBDMC at Knott County Central High School.

2. The complaint does not identify the role of Appellants Rex Slone, Dennis Jacobs, Randy Combs, Lantre Combs, Anne Dixon, and Kimberly King. It appears from our review of the record that Appellants Rex Slone, Dennis Jacobs, Randy Combs, Lantre Combs, and Anne Dixon are, or at relevant times were, members of the Knott County Board of Education. Appellant Kimberly King followed Harold Combs as superintendent of the Knott County school system.

Patton then brought suit in the Knott Circuit Court against Pollard, Combs, the Board and its individual members, and the' individual members of the SBDMC. She alleged in her complaint that "each of the Defendants' acts and failure to act were grossly negligence [sic], wanton, reckless and done in other [sic] disregard for the rights of the Plaintiff." Without specifically identifying any particular claim or cause of action, Patton alleged in her complaint that each defendant had "violated duties arising by and under constitution, statute, common law, policy, procedure, construction and practice" and that she had been damaged by "Defendants' breeches [sic] of duties, acts and failures to act, as required by law, policy, procedure, custom in practice."

Appellants filed a motion for summary judgment, which the trial court eventually granted, dismissing Patton's complaint. The trial court concluded that the school board could not be liable for the elimination of the French class at Knott County Central High School because the Kentucky Educational Reform Act vests exclusive authority in the SBDMC, not the school board, to make decisions regarding the curriculum taught at the individual schools. The trial court also ruled that Patton's claim against the school board was barred by the doctrine of governmental immunity, and that the individual members of the school board and the SBDMC were protected by the doctrine of qualified official immunity. The trial court expressly noted that there was no evidence that "any of the named individuals violated any ministerial duties owed to [Patton]."

Patton next appealed to the Court of Appeals. The Court of Appeals reversed the summary judgment in favor of the Board upon the grounds that Patton's complaint had stated a claim against the school board under KRS 61.102, the whistleblower statute, and that the evidence viewed in the light most favorable to Patton precluded summary judgment.[3] The Court of Appeals also reversed the summary judgment in favor of the individual Appellants, reasoning that they were not subject to qualified official immunity because the actions taken to Patton's detriment were ministerial, not discretionary.

## II. PATTON HAD NO CLAIM UNDER THE KENTUCKY WHISTLEBLOWER ACT AND SHE NEVER ASSERTED ONE IN THE TRIAL COURT OR IN THE COURT OF APPEALS

■ Appellants complain that the Court of Appeals reinstated Patton's suit against them upon a legal theory that Patton never asserted. Patton refutes that claim with the assertion that her response to the motion for summary judgment "repeatedly" alleged claims of retaliatory discharge. In reversing the summary judgment that dismissed Patton's claims, the Court of Appeals reasoned that Patton "rais[ed] genuine issues of material fact which necessitate the reversal of the summary judgment with respect to her state law claims against the Board." The "state law" relied upon by the Court of Appeals

---

**3.** In its opinion, the Court of Appeals undertook to "address Patton's federal claims of retaliation under the First Amendment based on her speech in response to the letter of reprimand issued by Pollard." This is interesting because as we review the issues presented in the Court of Appeals, and with particular focus on the briefs Patton filed therein, we note that she never asserted a First Amendment claim (although she did assert a free speech claim under Kentucky law), nor did she raise any other specific claim based upon federal law. In any event, the Court of Appeals concluded that such claims afforded Patton no relief from the summary judgment entered against her.

to revive Patton's action against the school board was KRS 61.102, which provides a cause of action for state government employees who suffer retaliation or reprisals for exposing their employers' violations of law or governmental "mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety." KRS 61.102(1).[4]

"KRS 61.102 was designed to protect employees from reprisal for the disclosure of violations of the law. Thus the name Whistle Blower' statute." *Boykins v. Hous. Auth. of Louisville*, 842 S.W.2d 527, 529 (Ky.1992). *See also Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 428 (Ky.2005) ("KRS 61.102 prohibits employers from subjecting public employees to reprisal for reporting information relating to the employer's violation of the law, alleged fraud, or abuse, etc.").

Significantly, however, Patton did not raise in the trial court or the Court of Appeals any claim based upon KRS 61.102. She never presented any evidence that her job was terminated because she disclosed or reported "an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance ..., or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety." KRS 61.102(1). Rather, Appellee argued in the trial court that the actions of Pollard and the Board were "motivated by a desire to retaliate against her for her criticism of [Pollard]" violating her right to free speech pursuant to the Constitution of Kentucky. She also alleged that "her discharge violated Kentucky's well-defined public policy prohibiting discharges based on the exercise of her free speech rights under the Kentucky Constitution." That argument was an obvious attempt to invoke the common law tort of retaliatory discharge in violation of public policy, which the Court of Appeals rejected, and which now even Patton concedes was not a "cognizable" claim.

Despite Patton's current contention that she "specifically" and "repeatedly" argued retaliatory discharge under KRS 61.102 to the trial court in response to Appellants' motion for summary judgment, she only cites us to her public policy and constitutional argument, and our review of the record reveals no pleading that asserts the whistleblower act or its essential elements.

A claim alleging discharge in violation of public policy founded upon the exercise of rights under Section Eight of the Constitution of Kentucky is very different from a statutory argument founded in the whistleblower act. None of Patton's pleadings in the trial court give hint of a cause of action based upon KRS 61.102. It is apparent that the whistleblower act was not on her mind, nor was it on the trial court's radar screen, when summary judgment was debated in the trial court. The difference in the two causes of action is substantial. Calling her boss a "twit" or complaining

---

4. KRS 61.102(1) specifically provides:

No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of ... any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

that she was improperly reprimanded for exercising her right to sick leave may be an obvious exercise of free speech, but it does not readily appear to be a disclosure of "mismanagement, waste, fraud, [or] abuse of authority" that would implicate a basis for relief under KRS 61.102. Ultimately, the trial court never had the opportunity to consider if Patton had a claim under KRS 61.102 that might survive Appellants' motion for summary judgment because Patton never contended that she had such a claim. Moreover, because Patton never invoked that statute as the basis for her cause of action, Appellants never had any reason to take discovery and offer an argument to refute a claim that was discovered for the first time in the Court of Appeals.

■ We said in *Fischer v. Fischer*, "[i]t has long been this Court's view that specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal. Most simply put, '[a] new theory of error cannot be raised for the first time on appeal.' " 348 S.W.3d 582, 588 (Ky.2011). *See also Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky.2009) (quoting *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky.1989)) ("An appellate court 'is without authority to review issues not raised in or decided by the trial court.' "). Accordingly, we conclude that the Court of Appeals erred in asserting, *sua sponte* on Appellee's behalf, a cause of action under the whistleblower act that she did not present for herself in her complaint, or in her response to Appellants' motion for summary judgment, or even in her arguments to the Court of Appeals. Moreover, even if the issue had been duly raised for review by the Court of Appeals, it does not appear that such a claim, based upon the facts before us, could have presented a genuine issue of material fact that

would have overcome a motion for summary judgment.

■ The only expression of Patton suggested by the Court of Appeals as a report or disclosure covered by KRS 61.102 is Patton's letter to Pollard, a copy of which she sent to Superintendent Combs, protesting the reprimand issued to her and placed in her employment file. Patton's letter to Pollard states, in pertinent part:

I believe that the written reprimand received February 22, 2007 is null and void. In reading your e-mail [sic], I believe the message contained was contradictory to the one I received just a few weeks earlier.

It is with this understanding, as well as information found among the following list, as well as additional research into these matters, that I respectfully require that this written reprimand, dated January 18, 2006, be expunged from my professional evaluation folder.

The following items influence my request:

— Knott County Schools PN Agreement (see items 6–14–6, 8–2–1, and 13–1)

— directives from superiors at the Kentucky Department of Education

— a doctor's excuse for sick days mentioned in item 1 of reprimand that has not been requested neither by the school nor the office of Knott County Board

— KRS 161.155

If you would like further clarification for my justification in this demand, I will be happy to meet with all parties involved.

The letter is plainly an expression of her personal opinion that the reprimand placed in her file was invalid. The averment that her "request" was "influence[d]" by KRS 161.155, a collective bargaining agreement

between the Knott County Education Association and the Board, and "directives" from the Kentucky Department of Education in no way alleges illegal conduct on the part of government officials. At no point in the letter does Patton purport to expose violations of any law or any "suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety" covered by KRS 61.102. Rather, the letter expressed an understandable demand to have the reprimand removed from her file. KRS 61.102 is simply not implicated by that communication and could not serve as the statutory basis for establishing a genuine issue of law that could overcome Appellants' motion for summary judgment. The Court of Appeals erred by using it as such and, therefore, we reverse its opinion and reinstate the summary judgment granted to the Knott County Board of Education.[5]

## III. THE COURT OF APPEALS ERRED IN REVERSING SUMMARY JUDGMENT AS TO THE INDIVIDUAL APPELLANTS

Appellants argue, as the trial court concluded in its summary judgment, that the individual members of the Board and the SBDMC are protected from Patton's claims by qualified official immunity. The Court of Appeals reversed the summary judgment and reinstated Patton's claims against the individual Appellants based upon its belief that the actions of the SBDMC and the school board members that terminated Patton's position as French teacher were ministerial in nature, rather than discretionary.

■ " 'Official immunity' is immunity from tort liability afforded to public offi-

cers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed." *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky.2001). While official immunity can be absolute, "[q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[;] (2) in good faith; and (3) within the scope of the employee's authority." *Id.* at 522 (citations omitted). "Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citation omitted).

■ The wrongful conduct Patton alleges is that the individually named Appellants failed to follow their own policies for implementing a curriculum change. Specifically, Patton claimed that the members of the SBDMC (other than herself, of course) made the determination to switch the foreign language curriculum from French to Spanish without utilizing a standing curriculum committee as set forth in the SBDMC's published policy manual. She faults the school board members for their refusal to reverse that decision. The Court of Appeals reasoned that while the *creation* of the SBDMC policies was discretionary, offensive conduct in the *execution* of those policies was ministerial in character, and therefore, was not cloaked

---

**5.** Having determined that the trial court's summary judgment in favor of the Board was proper, we need not address Appellants' argument that Appellee failed to exhaust her administrative remedies.

under the protection of qualified official immunity. *See Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 150 (Ky. 2003) ("Promulgation of rules is a discretionary function; enforcement of rules is a ministerial function."). "Another section of the Code of Conduct charged teachers with the responsibility to 'enforce rules and regulations of the Board of Education.' Compliance with this directive was a ministerial, not a discretionary or regulatory, function." *Id.* at 151.

We do not disagree with the cited principle, but we disagree with its application by the Court of Appeals. Notwithstanding the policies put in place by the SBDMC for the establishment of its Curriculum Review and Improvement Committee, those same policies in compliance with the applicable statutes, include the provision that "the council will make all decisions [with respect to curriculum] based upon the enhancement of academic achievement and learning of each student."

At this point, it is important to note that the Kentucky Education Reform Act (KERA) vests in the site-based decision making councils of the local school, such as the one involved here, the responsibility for "determining curriculum" and "determining the composition of the staff at the school." *Bd. of Educ. of Boone County v. Bushee*, 889 S.W.2d 809, 816 (Ky.1994). KRS 160.345(2) requires that "[e]ach local board of education *shall* adopt a policy for implementing school-based decision making in the district ... to allow the professional staff members of a school to be involved in the decision making process as they work to meet educational goals[.]" KRS 160.345(2)(i), as it existed when Patton's position was terminated,[6] more specifically provided, "[t]he school council shall adopt a policy to be implemented by the principal in the following additional areas: 1. Determination of curriculum, including needs assessment and curriculum development[.]"

It may reasonably be concluded that members of the SBDMC at Knott County Central High School had the statutory duty to establish a school curriculum and to adopt a policy for assessing curriculum needs. The failure to comply with that duty can fairly be characterized as a "ministerial" action because it is "an identifiable deviation from an 'absolute, certain, and imperative' obligation—whatever its source—such that it requires 'only obedience' or 'merely execution of a specific act from fixed and designated facts.'" *Haney v. Monsky*, 311 S.W.3d 235, 245 (Ky.2010) (quoting *Yanero*, 65 S.W.3d at 522).

In this case, whether the SBDMC complied with a statutory directive is a disputed issue of fact, but it is a factual dispute without material significance. Patton's complaint rests, not upon whether the SBDMC members complied with the duty to *establish* a curriculum policy and committee; rather, Patton's complaint is based upon the claim that the SBDMC made the specific curriculum choice as to what foreign language to teach, without using their curriculum committee.

Clearly, deciding what course should be taught is purely an exercise of judgment and is a discretionary act. In other words, the SBDMC's duty to adopt a curriculum is a ministerial duty because the council is directed by statute to do so. But deciding whether the curriculum should include Spanish rather than French, or one course instead of another where neither is specifically mandated by law, is an "exercise of discretion and judgment, or personal delib-

---

6. Currently, KRS 160.345(2)(i)(1) states: "Determination of curriculum, including needs assessment, curriculum development and responsibilities under KRS 158.6453(7)" The additional language, "and responsibilities under KRS 158.6453(7)," is not material to any aspect of this case.

eration, decision, and judgment" that is plainly discretionary. *See Yanero,* 65 S.W.3d at 522.

Even if, as Patton alleges, the SBDMC members failed to properly comply with the ministerial duty of adopting curriculum committee policies and following them, their ultimate curriculum decision was a discretionary function. In the final analysis, Patton was not damaged by the SBDMC's failure to use the curriculum committee (assuming for the sake of argument. that it did not use the curriculum committee) because the curriculum committee has no authority to decide what courses to include in the curriculum. Patton's injury arose from the decision made by the SBDMC, not from the process it used for reaching the decision. In deciding that Spanish instead of French should be taught at the school, the SBDMC members acted in a purely discretionary capacity; the decision was based on each member's individual judgment pursuant to the authority granted the SBDMC.

The actions of the individual members of the school board denying Patton's request to overturn the SBDMC's decision were also discretionary. Accordingly, we conclude that the Court of Appeals erred in its decision to reverse the summary judgment dismissing Patton's claims against the individually named Appellants upon the grounds of qualified official immunity.

### IV. CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of Appeals and reinstate, in its entirety, the summary judgment entered in this matter by the Knott Circuit Court.

All sitting. All concur.