KELLER, J., CONCURRING IN PART AND DISSENTING IN PART:
I concur with the majority opinion's holding that there can be both ministerial and discretionary components to the duty to report. However, I respectfully dissent from the majority opinion's analysis and conclusion that the school officials' duties in this case were discretionary. I believe the majority overlooks important precedent in immunity law and erroneously relies on cases that are clearly distinguishable. I also hold that the majority has too broadly expanded our immunity law.
IMMUNITY: MINISTERIAL V. DISCRETIONARY
The school officials have qualified official immunity if their alleged duties are discretionary, performed in good faith, and within the scope of the officials' duty. Yanero v. Davis, 65 S.W.3d 510, 522 (Ky. 2001) (internal citations omitted). "[A]n officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution *845 of a specific act arising from fixed and designated facts." Id. at 522 (internal citations omitted). "That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature." Id. (citing Upchurch v. Clinton County, 330 S.W.2d 428, 430 (Ky. 1959) ).
The analysis of the school officials' immunity in this case entails a two-step process in examining the duties they undertook. The first step involves the officials' investigation and policy decision in implementing an improvement plan for Mitchell. The second step involves the officials' ministerial duty in enforcing the plan.
In Patton v. Bickford, this Court discussed the case of Knott County Board of Education and the school's duties to adopt a curriculum and compared that analysis with Patton, where the school had adopted a code of appropriate student behavior. 529 S.W.3d 717, 725 (Ky. 2016). In Knott County, "[t]he duty to adopt a curriculum was held to be a ministerial duty because it was mandated by statute, but the policy choice of what subjects to include within the curriculum ... was held to be a discretionary duty to which qualified immunity attached." Id. (citing Knott County Bd. Of Educ. v. Patton, 415 S.W.3d 51, 58 (Ky. 2013) ). In Patton, "[t]he duty to implement a code of appropriate student behavior was a ministerial duty ... [but] the choice of specific provisions and the assessment of their adequacy to address all concerns are purely of a discretionary character." Id. (internal citations omitted).
Patton went on to analyze the ministerial duties of teachers to supervise students and the discretionary duties of administrators assigning someone to supervise students. Teachers, who were not tasked with the promulgation of policy, but with its enforcement, had a ministerial duty to supervise. Id. at 727. This is very instructive in Doe's case for several reasons. The school officials' decision to request Mitchell's phone records and to place him on an improvement plan was discretionary, in that the officials had to make policy decisions regarding personnel. However, once the officials established the policy, i.e., requested phone records and promulgated an improvement plan, they had a ministerial duty to enforce the policy they established. Turner and the other officials did not collect Mitchell's phone records and such failure was not due to forgetfulness or miscomprehension regarding their importance. Additionally, the enforcement of this plan was ministerial because the officials did not delegate enforcement to subordinates. No one besides the officials could enforce the plan because no one besides the officials was informed of the situation. So, while the initial development of the plan of action was discretionary, the enforcement of the plan was clearly ministerial, and therefore the officials do not enjoy immunity for any negligent enforcement or failure to enforce the plan designed.
A. DOE PRESERVED THE ISSUE OF VIOLATION OF SCHOOL POLICIES, AND THE FAILURE OF THE OFFICIALS TO ADHERE TO SUCH POLICIES WAS THE VIOLATION OF SPECIFIC, MINISTERIAL DUTIES.
The majority opinion indicates that Doe did not raise school policies, Policy 03.1325, titled Disrupting the Educational Process, and Policy 03.162, titled Harassment/Discrimination, in the courts below, and thus, any claim of error in the school officials' violations of these policies was not properly before this Court on review. The majority opinion states that Policy 03.162 was only referenced in Doe's Court of Appeals' brief through a footnote and Policy 03.1325 was part of the appendix containing Breathitt County Board of Education Policies, *846 but that Doe did not argue its applicability before the Court of Appeals. These assertions by the majority opinion are inaccurate.
In the trial court, the school officials moved for summary judgment on the issue of immunity. In Doe's response to the motion for summary judgment, Policy 03.1325 was attached as an exhibit. Policy 03.162 was attached as an exhibit and referenced in the body of her responsive motion. These issues were properly raised before the trial court and were presented for that court's consideration.
It is imperative to point out that Doe prevailed in the trial court. The school officials were the parties aggrieved by the denial of their motion for summary judgment. The obligation to appeal rested with the officials, not with Doe. Doe had no obligation whatsoever to raise the issues she presented to the trial court on the officials' appeal to the Court of Appeals.[31] Her obligation was to refute the issues raised by the school officials. Only upon an adverse ruling from the Court of Appeals did Doe have an affirmative duty to present her arguments for why the circuit court was correct in denying a grant of immunity. Doe's brief to this Court directly discusses the policies. As such, she has fulfilled any preservation obligation she had. We further note that the trial court entered an order denying summary judgment on immunity grounds. The court's order did not indicate its legal analysis or what law it thought was dispositive.
Policy 01.5 states that "[a]ll policies of the Board are binding on employees of the District, schools, students, and on the board itself. Employees and students who fail to comply with Board policies may be subject to disciplinary action."
Policy 09.227, titled Child Abuse, states that
[a]ny teacher, school administrator, or other school personnel who knows or has reasonable cause to believe that a child under age eighteen (18) is dependent, abused or neglected shall immediately make a report to a local law enforcement agency or the Kentucky State Police, the Cabinet for Families and Children or its designated representative, the Commonwealth's Attorney or the County Attorney in accordance with KRS 620.030.
This provision references KRS 600.020(1)(15) containing the definitions for the chapter, including what constitutes a dependent, neglected or abused child. Policy 09.227 goes on to say: "Only agencies designated by law are authorized to conduct an investigation of a report of alleged child abuse. Therefore, the District shall not first investigate a claim before an employee makes a report to the proper authorities."
The District saw fit to leave the substantiation of any allegations to those who are trained and designated to conduct an investigation. These polices place specific duties on school district personnel. Policy 09.227 further instills employees' duties to report suspected abuse prior to investigation. These duties are absolute, and therefore, ministerial.
*847 B. TURNER V. NELSON IS CLEARLY DISTINGUISHABLE.
The majority dismisses Doe's contention that Turner v. Nelson, 342 S.W.3d 866 (Ky. 2011) is factually distinguishable and not pertinent to analyzing immunity in this case. I agree with Doe, however, that Turner v. Nelson is distinguishable from the case at bar.
The majority states that Turner "specifically analyzed whether a teacher was entitled to qualified official immunity when it was alleged she should have reported abuse that she had not personally observed." Turner involved allegations of a five-year-old kindergarten student touching another five-year-old kindergarten student. The first holding of Turner was that KRS 620.030 is limited by its plain language to reporting alleged child abuse to a "scenario in which his or her 'parent, guardian, or other person exercising custodial control or supervision' inflicted or committed abuse, allowed abuse to be inflicted or committed, or created or allowed to be created a risk of abuse." Turner, 342 S.W.3d at 872. "As a result, the mandatory reporting requirement of KRS 620.030(1) does not apply when a child inappropriately touches another child unless a parent, guardian, or other person exercising custodial control or supervision allows such inappropriate touching to be committed or creates or allows such a risk of abuse." Id. This holding makes Turner's distinguishability even clearer. The teacher in Turner had no duty to report because the incident was not covered under the mandatory reporting statute.
The Court went on to hold that mandatory reporting is only required when a person knows or has reasonable cause to believe that a child is abused and the determination of reasonable cause to believe involves the exercise of discretion. Id. at 877-78. This point is important to the majority's analysis. However, other cases have distinguished Turner's applicability.
In Patton v. Bickford, this Court noted that Turner "is an atypical case." Patton v. Bickford, 529 S.W.3d 717, 728 (Ky. 2016). The degree of discretion in weighing the credibility of the children and whether the alleged actions of the five-year-old could even qualify as sexual abuse outweighed the ministerial duty to report. Id. The case at bar does not involve five-year-old children. We are dealing with an adult teacher, in a supervisory role, who, at the very least, violated school policies in his excessive texting with Betty. We are dealing with at least one school official who suspected such texting to contain inappropriate, sexual content, prior to speaking with Betty's parents which occurred at Betty's parents' behest. "The need to use common sense and ordinary judgment to avoid negligence did not convert the task to a discretionary one." Id.
In Gaither, this Court held that Kentucky State Police (KSP) officers violated a ministerial duty when they used a confidential informant after the informant's identity had been compromised. Gaither v. Justice & Public Safety Cabinet, 447 S.W.3d 628 (Ky. 2014). This holding was based on KSP's violation of a "known rule" which was deemed ministerial. Id. at 636. Even though the KSP officers did not have the specific directives of a statute or an administrative regulation to follow, and their decision was not dictated by a "clearly defined duty to perform an act," that duty was found by this Court to be ministerial. Id. at 635. The Court gave this example: "if a state entity has actual notice of the existence of a dead or dangerous tree on property owned by that state entity, inspecting or removing the tree may be a ministerial act. While there is no duty requiring state employees to inspect trees, a ministerial imperative would arise *848 from the knowledge that the tree is dangerous and the common law duty of landowners with respect to latent hazard of which they have notice." Id.
Here, Turner and the other officials were on notice that Mitchell was acting inappropriately. Aside from Turner's initial belief that issues of sexual impropriety were involved, Mitchell, without doubt, was having excessive communications with female students in violation of school ethics and policy, as indicated in Turner's letter to Mitchell after speaking to Betty's parents and in the improvement plan set up for Mitchell. The officials' failure to properly investigate and substantiate or disprove their suspicions, and the actual violations of policy, were ministerial and therefore, not afforded immunity.
C. COMMONWEALTH V. ALLEN PROVIDES GUIDANCE.
The Court in Turner also distinguished that case from prior precedent. Justice Scott, in Turner, stated:
In Commonwealth v. Allen, 980 S.W.2d 278, 279 (Ky. 1998), this Court deemed the language of KRS 620.030(1) to be "clear and unambiguous." Id. at 281. However, Allen involved a teacher's report under KRS 620.030(1) that another teacher had engaged in sexual contact with two sixth-grade students. Here, we are called upon to interpret the mandatory reporting obligations of KRS 620.030(1) where the alleged perpetrator was a five-year-old classmate.
Turner, 342 S.W.3d at 871.
In Allen, students reported to a teacher and counselor that another teacher had engaged in sexual contact with students. 980 S.W.2d at 279. The teacher and counselor followed school protocol and notified the principal of what they "had heard from the students." Id. (emphasis added). The teacher and counselor were later indicted for failure to report in violation of KRS 620.030(1). Id.
When the case finally reached this Court, the teacher and counselor argued that they complied with their duty because they told their supervisor, the principal. They acknowledged their duty to report under the first sentence of KRS 620.030(1), but argued that the second sentence of the statute cut off any further duty on their part. The second sentence reads: "Any supervisor who receives from an employee a report of suspected dependency, neglect or abuse shall promptly make a report to the proper authorities for investigation." KRS 620.030(1).
This Court held that the statute mandates reporting by all individuals with firsthand knowledge or reasonable cause to believe that a child is abused. Allen, 980 S.W.2d at 281. "Supervisors have a dual responsibility. They must not only report in their individual capacity, they must also relay to authorities any reports they receive from their subordinates. " Id. (emphasis added). "If the legislature had intended to create an exception to the mandatory reporting duty, it could have explicitly done so[.]" Id. at 280. "The foregoing conclusion is strengthened by the final sentence of KRS 620.030(1), which states that '[n]othing in this section shall relieve individuals of their obligations to report.' " Id. at 281. " KRS 620.030(1) does not relieve any individual of the duty to report; the statute merely imposes an additional, heightened duty on supervisors." Id.
The separate concurring opinion by Justice Cooper in Allen is also instructive. The evidence showed that teachers received a report about abuse of two sixth-grade girls; the teachers reported the information not to the authorities, as required by statute, but to their principal; he failed to report the information to authorities;
*849 the teacher later abused a third girl; this time, the child and several eyewitnesses reported the incident to the assistant principal who reported to the proper authorities; and had teachers and the principal obeyed their statutory duties, perhaps the third victim could have been spared the abuse. Id. at 282 (Cooper, J., concurring). Justice Cooper went on to deem irrelevant a school protocol requiring the teacher and counselor to report alleged abuse to the principal instead of the proper authorities. Such "protocol" was illusory and only provided that the first contact for any information should always be the principal. Id. (Cooper, J., concurring).
Justice Johnstone dissented in Allen and was joined by Justices Graves and Wintersheimer. The dissent would have held that the statute placed upon supervisors the duty, and the teacher and counselor's prior reporting to their supervisor, did, in fact, cut off any further duty on the part of the teacher and counselor. Id. at 283-84. (Johnstone, J., dissenting).
Applying Allen to the case at bar, Turner and the other school officials had an independent duty to report suspected abuse. Further, no school "protocol" existed for them reporting their suspicions to another internal authority, but rather policies existed that supplemented their duty to report under KRS 620.030(1). Even taking into account the Allen dissent, the school officials are not relieved of their duty to report. The reasoning is this: if Betty or her parents had complained to a teacher at the school, the Allen dissent would hold that once the teacher reported the issue to the administrators, it would be incumbent and absolute on the administrators to report under the statute. In the case at bar, reports were not made to teachers but were rather presented to those officials with the most authority, thereby invoking their individual duty to report as well as their duty as supervisors to take action.
The General Assembly clearly placed upon supervisors at least a concurrent duty to report, but one could also interpret KRS 620.030(1) as placing a greater duty on supervisors to report. As the second sentence in the statute states: "Any supervisor who receives from an employee a report of suspected dependency, neglect or abuse shall promptly make a report to the proper authorities for investigation." This sentence does not contain the "knows or reasonable cause to believe" language from the first sentence. It seems to place an absolute duty on supervisors to report any received allegation of abuse, regardless of the supervisors' own belief.
The majority's holding penalizes students, parents, or others reporting abuse for making such report to the top of the organizational hierarchy. "While immunity questions are always difficult, there must be at least a common-sense understanding of what a particular person's job requires." Marson v. Thomason, 438 S.W.3d 292, 300 (Ky. 2014). Here, Turner and the other officials were tasked with overseeing personnel and enforcing the policies of the school district. They received a firsthand complaint of inappropriate conduct on the part of one of the school's teachers and did not report the allegations, contrary to the statute, when they would have been under an absolute duty to report the allegations had they received the complaint secondhand. As discussed further below, I am not persuaded that our immunity jurisprudence was intended to work in such an illogical manner, and, as such, I would affirm the trial court's finding that immunity is not afforded in this case.
I believe the majority's holding misses the mark when it comes to the General Assembly's intent in KRS 620.030. Not only is KRS 620.030 referred to as the *850 mandatory reporting statute, but KRS 620.050 is extremely relevant as well.
Anyone acting upon reasonable cause in the making of a report or acting under KRS 620.030 to 620.050 in good faith shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such participant shall have the same immunity with respect to participation in any judicial proceeding resulting from such report or action. However, any person who knowingly makes a false report and does so with malice shall be guilty of a Class A misdemeanor.
KRS 620.050.
The General Assembly saw fit to immunize those who report suspected abuse to encourage such reporting. Here, the record shows that Turner suspected that Mitchell's texting to Betty was of an inappropriate, sexual nature. This suspicion occurred prior to speaking with Betty's parents or Mitchell; however, the suspicion resulted in Turner requesting additional phone records. The policy of the statute requires reporting when those mandated to do so have similar suspicions as Turner possessed in the case at bar.
Various agencies are tasked with investigating allegations of abuse. Those agencies include the Cabinet for Health and Family Services, law enforcement agencies, and County or Commonwealth's Attorney offices. For example, if a child came to school and told his teacher that someone at home had touched him inappropriately, the teacher would have an absolute, mandatory duty to report. The Cabinet would then investigate and either find the claims substantiated or unsubstantiated. This is clearly distinguishable from Turner, as discussed above. Why then would we treat school officials, who suspect something of an inappropriate nature from one of their own employees, differently from the teacher who has a suspicion about inappropriate acts that occur completely removed from the school environment? The answer is that we should not treat them differently at all, and I believe the majority errs in doing so.
D. BAD FAITH COULD STILL PRECLUDE GRANTING IMMUNITY TO THE SCHOOL OFFICIALS.
The majority opinion states the investigation by the officials was discretionary, and further holds that the officials' failure to obtain Mitchell's phone records does not convert the duty into a ministerial one. Doe did allege that even if the officials' duties were discretionary, they acted in bad faith and were therefore not entitled to the protections of immunity. The majority dismisses Doe's assertion, that even if the duty was discretionary, there is no evidence of bad faith on the part of Turner and the others.
The trial court, in its cursory denial of summary judgment on immunity grounds, did not state whether it found that the duties were ministerial or were discretionary but conducted in bad faith. "[O]nce the officer or employee has shown prima facie that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was in bad faith." Rowan County v. Sloas, 201 S.W.3d 469, 476 (Ky. 2006). Although I would hold they are clearly ministerial, I believe the majority at the very least should remand the case to the trial court for findings on whether Turner and the others acted in bad faith in executing their discretionary duties, and afford Doe the opportunity to offer proof on the allegation of bad faith, if any such proof exists.
THE MAJORITY'S DEFINITION OF ABUSE IS TOO NARROW
Doe's complaint indicates that at all times the sexual abuse was committed, *851 Doe was a minor. The remainder of the complaint indicates that each allegation was the proximate cause of Doe's injuries and damages. Doe's pleadings in the trial court and her briefs to the Court of Appeals and this Court reference not only the sexual abuse that occurred prior to school officials being informed about Betty, but also the inappropriate texting that occurred between Doe and Mitchell for a year after the officials were on notice.
As the majority correctly notes, the definition of an abused child is contained in KRS 600.020. Specifically, the relevant provisions are as follows:
(1) "Abused or neglected child" means a child whose health or welfare is harmed or threatened with harm when:
(a) His or her parent, guardian, person in a position of authority or special trust, as defined in KRS 532.045, or other person exercising custodial control or supervision of the child:
1. Inflicts or allows to be inflicted upon the child physical or emotional injury as defined in this section by other than accidental means;
2. Creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means;
...
5. Commits or allows to be committed an act of sexual abuse, sexual exploitation, or prostitution upon the child;
6. Creates or allows to be created a risk that an act of sexual abuse, sexual exploitation, or prostitution will be committed upon the child;
...
(26) "Emotional injury" means an injury to the mental or psychological capacity or emotional stability of a child as evidenced by a substantial and observable impairment in the child's ability to function within a normal range of performance and behavior with due regard to his or her age, development, culture, and environment as testified to by a qualified mental health professional;
...
(47) "Person exercising custodial control or supervision" means a person or agency that has assumed the role and responsibility of a parent or guardian for the child, but that does not necessarily have legal custody of the child;
...
(57) "School personnel" means those certified persons under the supervision of the local public or private education agency;
...
(61) "Sexual abuse" includes but is not necessarily limited to any contacts or interactions in which the parent, guardian, person in a position of authority or special trust, as defined in KRS 532.045, or other person having custodial control or supervision of the child or responsibility for his or her welfare, uses or allows, permits, or encourages the use of the child for the purposes of the sexual stimulation of the perpetrator or another person;
(62) "Sexual exploitation" includes but is not limited to a situation in which a parent, guardian, person in a position of authority or special trust, as defined in KRS 532.045, or other person having custodial control or supervision of a child or responsible for his or her welfare, allows, permits, or encourages the child to engage in an act which constitutes prostitution under Kentucky law; or a parent, guardian, person in a position of authority *852 or special trust, as defined in KRS 532.045, or other person having custodial control or supervision of a child or responsible for his or her welfare, allows, permits, or encourages the child to engage in an act or of obscene or pornographic photographing, filming, or depicting of a child as provided for under Kentucky law.
In Knight v. Young, this Court held, albeit in a custody matter, that evidence of the mother's infliction of emotional harm on the children, and the potential for the infliction of future emotional harm was sufficient to deny mother custody of the children. 2008-SC-000404-DG, 2010 WL 252246, at *6 (Ky. Jan. 21, 2010). In custody proceedings, the Court held that emotional harm does not have to rise to the level of emotional injury as defined in the Juvenile Code, KRS 600.020(24). Id.
In Osborne v. Keeney, this Court adopted a rule for recovery for emotional injuries in a negligence action:
[W]e recognize that emotional tranquility is rarely attained and that some degree of emotional harm is an unfortunate reality of living in a modern society. In that vein, to ensure claims are genuine, ..., recovery should be provided only for "severe" or "serious" emotional injury. A "serious" or "severe" emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiffs [sic] everyday life or require significant treatment will not suffice.
399 S.W.3d 1, 17 (Ky. 2012) (emphasis added).
Sexual molestation is so inherently injurious, or substantially certain to result in some injury, that the intent to injure, or the expectation that injury will result, can be inferred as a matter of law.... The emotional and psychological harm caused by sexual molestation is so well recognized, and so repugnant to public policy and to our sense of decency, that to give merit to a claim that no harm was intended to result from the act would be utterly absurd.
Thompson v. West American Insurance Company, 839 S.W.2d 579, 581 (Ky. App. 1992).
While the physical abuse of Doe had ceased by the time Turner and the officials learned of Mitchell's texting with Betty, there is no doubt that either abuse or risk of abuse continued for Doe. Mitchell continued to text Doe requesting an exchange of sexual photographs and requesting sexual encounters. Mitchell even asked Doe about the two of them having sex with one of Doe's friends, and Mitchell asked Doe to send him pictures of other girls. A teacher is a person in a position of authority and special trust. Arnett v. Commonwealth, 366 S.W.3d 486, 487 (Ky. App. 2011). The mental and emotional anguish Doe suffered through continued, inappropriate communication with Mitchell is a recoverable injury.
REVIEW IS LIMITED TO IMMUNITY ISSUE
The majority of this Court has also made conclusions beyond the immunity question, the only question raised by this appeal. Immunity is a question of law for the Court to decide. Rowan County v. Sloas, 201 S.W.3d 469, 475 (Ky. 2006). However, questions regarding breach of duty, injury, and causation in a negligence action are generally for the jury. Bartley v. Commonwealth, 400 S.W.3d 714, 726 (Ky. 2013) (citing Grand Aerie Fraternal Order of Eagles v. Carneyhan, 169 S.W.3d 840 (Ky. 2005) ; Pathways, Inc. v. Hammons, 113 S.W.3d 85 (Ky. 2003) ;
*853 Mullins v. Commonwealth Life Ins. Co., 839 S.W.2d 245 (Ky. 1992) ).
We are not deciding the merits of Doe's case here today, as she still must satisfy all of the elements of a negligence action, including breach, causation, and injury, and all of her other alleged causes of action not based in negligence.[32] But, from a review of the record and the applicable law, the school officials do not possess immunity warranting dismissal of Doe's claims at this stage of the proceedings.
For the foregoing reasons, I would affirm the Breathitt Circuit Court.

Fischer v. Fischer, 348 S.W.3d 582, 597 (Ky. 2011) ("Judicial economy requires that a party actually raise an issue for it to be treated as live on appellate review; it does not require that a prevailing party use what amounts to a separate appeal to maintain an ongoing dispute over an issue that was raised but, for whatever reason, not decided below."); see also Commonwealth v. Andrews, 448 S.W.3d 773 (Ky. 2014) (Having prevailed at the trial court level where the issue was raised, to preserve the issue for review by the Supreme Court, the Commonwealth was not required to raise the issue before the Court of Appeals.).

Doe brought various claims in her complaint including negligence; negligent hiring, training, supervision, and retention; negligent and intentional infliction of emotional distress; outrage; harassment; battery; breach of contract; and loss of consortium.