RENDERED: JULY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-0255-MR

JENNIFER KISHMAN,
INDIVIDUALLY AND AS NEXT OF
FRIEND AND GUARDIAN OF N.K.,
A MINOR AND KEN KISHMAN,
INDIVIDUALLY AND AS NEXT OF
FRIEND AND GUARDIAN OF N.K.,
A MINOR                                                          APPELLANTS


                      APPEAL FROM OLDHAM CIRCUIT COURT
v.                    HONORABLE JERRY CROSBY, II, JUDGE
                      ACTION NO. 15-CI-00237


OLDHAM COUNTY SCHOOL
DISTRICT FINANCE
CORPORATION; CAROL HUGHEY;
DAN ORMAN; DR. WILLIAM
WELLS; JAMES LEWIS STEWART;
AND KAREN OTTE                                                   APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND A. JONES, JUDGES.

JONES, A., JUDGE:  Appellants, Jennifer and Ken Kishman, individually and as next friends and guardians of their minor son, N.K.,[1] (collectively referred to herein as "Appellants") appeal from the Oldham Circuit Court's January 29, 2024, order granting summary judgment on the basis of qualified official immunity in favor of the Oldham County School District Finance Corporation and five individual school officials:  Dr. William Wells, Carol Hughey, James Lewis Stewart, Karen Otte, and Dan Orman (collectively referred to herein as "Appellees").  The circuit court determined that Appellees were immune from suit in their individual capacities because the acts alleged against them were discretionary, not ministerial.  After careful review of the record and applicable law, we affirm.

## I. BACKGROUND

### A. The Parties

Jennifer and Ken Kishman are the parents and legal guardians of N.K., a minor child with Down syndrome who is largely nonverbal and enrolled in a special needs' preschool program operated by the Oldham County School District.  The Kishmans filed suit individually and on behalf of N.K., asserting claims arising from an incident in which N.K. was left unattended on a school bus

---

[1] "N.K." is a pseudonym for the minor child, which was used below by both the parties and the circuit court.

for several hours. Gregory Clickner was the school bus driver responsible for transporting N.K. to school on the day of the incident, and Sharon Machi served as the monitor on the bus.[2]

In addition to Clickner and Machi, Appellants filed suit against the Oldham County School District Finance Corporation; Superintendent Dr. William Wells; Assistant Superintendent Dan Orman; Director of Pupil Transportation James Lewis Stewart; Preschool Coordinator Carol Hughey; and Karen Otte, N.K.'s preschool teacher.

## B. The Incident

On the morning of April 21, 2014, five-year-old N.K. boarded his assigned Oldham County school bus with the assistance of his mother, Jennifer Kishman. N.K. was secured in a child-proof five-point harness restraint system. Upon arrival at the school, Machi customarily unbuckled the children and helped them exit the bus, where teachers or aides were waiting to escort them to their classrooms. Those staff did not board the bus and relied on the driver and monitor to ensure that all students had disembarked. On this occasion, neither Clickner nor Machi removed N.K. from his seat. Instead, they drove the bus to the district's bus

---

[2] Although the circuit court's order did not dispose of the Kishmans' claims against Clickner and Machi, the court designated its judgment as final and appealable and included the necessary recitation under Kentucky Rules of Civil Procedure ("CR") 54.02. Accordingly, this appeal is properly before us.

compound and exited, leaving N.K. still restrained and unattended. It was later determined that neither Clickner nor Machi completed their required post-route check of the bus to ensure all students and belongings were off of the bus.

Approximately three hours later, Jennifer Kishman arrived at the school to pick N.K. up for a scheduled swim lesson. At that time, N.K.'s teacher, Karen Otte, informed her that N.K. had not arrived at school. Upon learning this, Jennifer advised that she had personally placed N.K. on the bus that morning. School officials initiated a search, and N.K. was located approximately thirty minutes later, still strapped into his seat on the parked bus at the compound.

Following his discovery, N.K. was transported by his mother to the hospital for evaluation. He did not sustain any physical injuries, but the Kishmans later asserted that he exhibited signs of trauma and was subsequently diagnosed with post-traumatic stress disorder. They allege ongoing emotional and psychological effects requiring continued treatment.

## C. Procedural History

The Kishmans filed suit in Oldham Circuit Court on April 21, 2015, asserting claims individually and on behalf of N.K. against Appellees, Clickner and Machi. All defendants were sued in both their official and individual capacities. The complaint alleged negligence and other tort claims arising from the incident in which N.K. was left unattended on the school bus.

Following discovery, the Oldham County School District Finance Corporation and the five individual school officials moved for summary judgment.[3] They argued that the official capacity claims and claims against the Finance Corporation were barred by governmental immunity, and that the individual capacity claims failed under the doctrine of qualified official immunity.

The circuit court granted the motion in full. It held that the claims against the defendants in their official capacities and against the Finance Corporation were barred by governmental immunity. As to the individual capacity claims, the court concluded that each moving defendant was entitled to qualified official immunity. Specifically, the court found that "[e]ven in the light most favorable to the Plaintiffs, the Court can find no absolute, certain or imperative obligation derived from a rule, policy, procedure, regulation, statute or practice from which these six Defendants are alleged to have deviated and violated." The court therefore determined that the acts at issue were discretionary, not ministerial, and immunity applied. This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[3] Neither Clickner nor Machi joined in the motion for summary judgment.

that the moving party is entitled to a judgment as a matter of law." CR 56.03. The appellate court reviews the grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

"In the context of qualified official immunity, '[s]ummary judgments play an especially important role', as the defense renders one immune not just from liability, but also from suit itself." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) (quoting *Rowan County v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)). Where there are no disputed facts at issue, whether a defendant is entitled to qualified official immunity is a question of law making it appropriate for the court to resolve as part of a motion for summary judgment. *Id.* at 239.

### III. ANALYSIS

On appeal, the Kishmans do not challenge the circuit court's ruling that the official capacity claims against the individual Appellees and the claims against the Oldham County School District Finance Corporation are barred by governmental immunity. Rather, they limit their challenge to the circuit court's conclusion that Dr. William Wells, Carol Hughey, James Lewis Stewart, Karen Otte, and Dan Orman are entitled to official qualified immunity.

Under *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001), "[w]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." Qualified official immunity applies to the negligent performance by a public officer or employee of: (1) discretionary acts or functions; (2) performed in good faith; and (3) within the scope of the employee's authority. *Id.*

Kentucky courts apply a two-step burden-shifting framework when determining whether qualified official immunity applies. First, the defendant must show that the conduct in question was discretionary and performed within the scope of his or her duties. If this threshold is met, the burden shifts to the plaintiff to establish – through direct or circumstantial evidence – that the discretionary act was not performed in good faith. *Yanero*, 65 S.W.3d at 523; *Sheehy v. Volentine*, 706 S.W.3d 229, 237 (Ky. 2024). These steps must not be conflated. The first step is resolved as a matter of law and does not require inquiry into negligence or good faith. Only if the act is found to be discretionary does the analysis move to the second step. *Id.*

Discretionary functions are those "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Morales v. City of Georgetown*, 709 S.W.3d 146, 154 (Ky. 2024) (quoting *Yanero*, 65 S.W.3d at

-7-

522).  By contrast, ministerial duties are those "that require only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts."  *Id.* at 155 (internal quotation marks and citation omitted).  The rationale for imposing liability for ministerial failures is that "a governmental agent can rightfully be expected to adequately perform the governmental function required by the type of job he does.  To the extent his job requires certain and specific acts, the governmental function is thwarted when he fails to do or negligently performs the required acts."  *Id.* (citation omitted).

However, few acts are purely discretionary or purely ministerial.  Accordingly, courts must assess the "dominant nature of the act."  *Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824, 832 (Ky. 2021) (quoting *Haney*, 311 S.W.3d at 240).  In making that determination, courts look primarily to internal rules, regulations, and policies governing the conduct of the employee.  *Morales*, 709 S.W.3d at 161.

As our Supreme Court emphasized, "[w]hen the courts of this Commonwealth are asked to conclude, as a matter of law, whether a government employee's actions are discretionary or ministerial, it is often the government agency's own internal rules, policies, [and] regulations that shed the most light on the distinction."  *Id.* at 155.  Where a policy or law mandates a course of conduct to

be followed "without regard to [the employee's] own judgment or opinion," the act is ministerial. *Bryant v. Louisville Metro Housing Authority*, 568 S.W.3d 839, 851 (Ky. 2019); *Peterson v. Foley*, 559 S.W.3d 346, 349 (Ky. 2018).

Additionally, supervising others is consistently recognized as a discretionary function. "[S]upervising the conduct of others is a duty often left to a large degree – and necessarily so – to the independent discretion and judgment of the individual supervisor." *Haney*, 311 S.W.3d at 244. "Deciding when, how, or to what degree one will supervise his subordinates is an inherently discretionary function deserving of qualified official immunity." *Morales*, 709 S.W.3d at 158.

Several Kentucky cases help illuminate the distinction between ministerial and discretionary duties in the context of educating and supervising children.

In *Knott County Board of Education v. Patton*, 415 S.W.3d 51 (Ky. 2013), the Court considered a straightforward example: the Board of Education had a ministerial duty to adopt a school curriculum, as required by statute, but retained discretion in selecting which subjects to include – such as whether to offer French or Spanish when neither was legally mandated. *Id.* at 58. The act of adopting a curriculum was therefore both ministerial in its obligation and discretionary in its implementation.

In *Marson v. Thomason*, 438 S.W.3d 292 (Ky. 2014), the Court addressed a claim brought by the parents of a visually impaired student who fell from bleachers that had not been fully extended. Although the duty to physically extend the bleachers was a ministerial duty regularly performed by the custodian on duty, that ministerial duty did not apply to the named school principals, who neither performed the task themselves nor had a specific obligation to do so. Their role was limited to assigning and overseeing custodial tasks and ensuring a safe school environment, a function the Court characterized as discretionary. *Id.* at 299-300. As the Court explained, "[l]ooking out for children's safety is a discretionary function for a principal, exercised most often by establishing and implementing safety policies and procedures." *Id.* at 299. In sum, while the failure to extend the bleachers may have constituted a breach of ministerial duty by custodial staff, it did not impose personal liability on the administrators who were more removed from day-to-day execution.

*Patton v. Bickford*, 529 S.W.3d 717 (Ky. 2016), involved the tragic suicide of an eighth-grade student who had been bullied at school. The student's estate sued various school personnel, alleging that they failed to intervene despite being aware of the bullying. The Supreme Court affirmed qualified immunity for school administrators, who had enacted extensive anti-bullying policies pursuant to their statutory obligation to adopt a code of student conduct. *Id.* at 725. The

content and structure of those policies, however, were deemed discretionary. By contrast, the teachers were not entitled to immunity. The Court found that school policy imposed a *clear*, *mandatory duty* on teachers to report bullying incidents, and that they had been specifically trained to recognize and respond to such behavior. *Id.* at 726-27.

Finally, in *James v. Wilson*, 95 S.W.3d 875 (Ky. App. 2002), the Court considered claims against teachers, administrators, and school board members arising from a fatal school shooting. Plaintiffs alleged negligence in failing to implement safety protocols, to discipline the shooter, and to respond to troubling writings submitted by the student. This Court rejected those claims, holding that the defendants were entitled to qualified official immunity. There was no evidence that the employees acted in bad faith or outside the scope of their authority, and their conduct – ranging from evaluating student work to handling discipline – was discretionary in nature. *Id.* at 908-09. While acknowledging that hindsight might cast their decisions in a negative light, we emphasized that qualified immunity shields school officials from liability for difficult judgment calls made in good faith.

Together, these cases reinforce a consistent theme in Kentucky jurisprudence: when a school employee violates a clear, mandatory rule or policy, liability may attach. But when decisions involve personal judgment, discretion, or

situational adaptation – even if later second-guessed – the law affords qualified immunity.

Appellants challenge the circuit court's grant of summary judgment solely as to their individual capacity claims against Appellees. They argue that these five school officials violated ministerial duties and are therefore not entitled to qualified official immunity. In support, Appellants point to Superintendent Dr. Wells' testimony that the school "takes full responsibility" and that Appellees "did not do their job as they should have." Appellants also rely on Dr. Orman's testimony that a JC-3 form (used to report educational neglect) was not filed immediately after the incident. Additionally, Appellants generally cite 702 KAR[4] 5:030, an administrative regulation governing school transportation procedures, as evidence that the conduct at issue was subject to clear, mandatory requirements.

Drilling down into the substance of their claims, Appellants allege that the Appellees failed to contact the Kishmans when N.K. did not arrive at school; allowed N.K. to remain unsupervised on the bus; failed to conduct a headcount as students exited the bus; failed to properly train Gregory Clickner and Sharon Machi to conduct such a headcount; failed to provide adequate medical treatment once N.K. was discovered; and failed to notify the Cabinet for Health and Family Services following N.K.'s discovery. Appellants argue that each of

---

[4] Kentucky Administrative Regulation.

these failures involved routine, clearly defined duties that did not require the exercise of discretion or personal judgment. Accordingly, they maintain that summary judgment was inappropriate because these officials violated ministerial duties.

Appellants first argue that school officials breached a ministerial duty by failing to notify them when N.K. was marked absent. The record reflects, however, that Oldham County Schools maintained a policy requiring parental notification only after a student had been absent for two consecutive days. N.K. was present at school the day before the incident, so the policy was not triggered. While Appellants believe that the policy was ill-advised or that an exception should have been made in this instance, the adoption of a policy, including its specific terms, is a discretionary act. *Patton*, 529 S.W.3d at 725 (noting that school officials had a ministerial duty to implement a code of student conduct, but the content of that policy was discretionary). Likewise, any decision to override the established policy and notify parents earlier would have required personal judgment and discretion. Because the district followed its written policy and no ministerial duty to notify on the first day of absence existed, Appellees' failure to contact the Kishmans when N.K. was marked absent does not support a claim for the breach of a ministerial duty.

Appellants next assert that school officials allowed N.K. to remain unattended on the bus. However, once N.K. was discovered, he was promptly removed and cared for. Appellants cite no written policy or statute imposing a ministerial duty on *these school officials* to perform a headcount as students exited the bus. Instead, the record reflects that the school's established policy placed the responsibility for checking the bus at the end of the route on the bus driver and monitor, Gregory Clickner and Sharon Machi, whose actions remain at issue in the circuit court and are not before us on appeal. There is a qualitative distinction between assigning and overseeing a task and personally performing it. *Marson*, 438 S.W.3d at 300. Here, the Appellees had no ministerial obligation to inspect the bus themselves; their role was supervisory and, therefore, discretionary. *Id.* at 299-300.

Appellants also contend that school officials failed to train Clickner and Machi to conduct a headcount. However, the general duty to supervise or train subordinates is widely recognized as discretionary in nature. *Morales*, 709 S.W.3d at 158 ("Deciding when, how, or to what degree one will supervise his subordinates is an inherently discretionary function deserving of qualified official immunity.").

Regarding the claim that school officials failed to report the incident to the Cabinet for Health and Family Services, Appellants rely on KRS[5] 620.030. This statute provides, in relevant part that:

(1) Any person who knows or has reasonable cause to believe that a child is dependent, neglected, or abused shall immediately cause an oral or written report, including but not limited to electronic submissions, to be made to a local law enforcement agency or to the Department of Kentucky State Police, the cabinet or its designated representative, the Commonwealth's attorney, or the county attorney by telephone or otherwise. If the cabinet receives a report of abuse or neglect allegedly committed by a person other than a parent, guardian, fictive kin, person in a position of authority, person in a position of special trust, or person exercising custodial control or supervision, the cabinet shall refer the matter to the Commonwealth's attorney or the county attorney and the local law enforcement agency or the Department of Kentucky State Police. Nothing in this section shall relieve individuals of their obligations to report.

(2) (a) Any person, including but not limited to a physician, osteopathic physician, nurse, teacher, school personnel, social worker, coroner, medical examiner, child-caring personnel, resident, intern, chiropractor, dentist, optometrist, emergency medical technician, paramedic, health professional, mental health professional, peace officer, or any organization or agency for any of the above, who knows or has reasonable cause to believe that a child is dependent, neglected, or abused, regardless of whether the person believed to have caused the dependency, neglect, or abuse is a parent, guardian, fictive kin, person in a position of authority, person in a position of special trust, person exercising custodial control or supervision, or another person, or who has

[5] Kentucky Revised Statutes.

-15-

attended such child as a part of his or her professional duties, shall:

1. Immediately make an oral or written report, including but not limited to electronic submissions, in accordance with subsection (1) of this section;

2. Immediately notify the supervisor of the institution, school, facility, agency, or designated agent of the person in charge; and

3. If requested, in addition to the report required in subsection (1) or (3) of this section, file with the local law enforcement agency or the Department of Kentucky State Police, the cabinet or its designated representative, the Commonwealth's attorney, or county attorney within forty-eight (48) hours of the original report a written report, including but not limited to electronic submissions, containing:

a. The names and addresses of the child and his or her parents or other persons exercising custodial control or supervision;

b. The child's age;

c. The nature and extent of the child's alleged dependency, neglect, or abuse, including any previous charges of dependency, neglect, or abuse, to this child or his or her siblings;

d. The name and address of the person allegedly responsible for the abuse or neglect; and

e. Any other information that the person making the report believes may be helpful in

the furtherance of the purpose of this
section.

(b) Upon notification, the supervisor or the designated
agent, if any, shall facilitate the cooperation of the
institution, school, facility, or agency with the
investigation of the report.

(c) Any person who knowingly causes intimidation,
retaliation, or obstruction in the investigation of the
report shall be guilty of a Class A misdemeanor.

(d) This section shall not require more than one (1)
report from any institution, school, facility, or agency.

*Id.* This statute imposes a duty to report suspected abuse or neglect to *either* a law

enforcement agency or the Cabinet. The record indicates that multiple calls and

reports were placed to the police department shortly after N.K. was found,

including by Principal Ketchum and others. There is no statutory requirement that

simultaneous dual reports be made to both the police and the Cabinet.

Accordingly, the statutory duty was satisfied, and any decision to go further would

have been discretionary.

Appellants further claim that school officials failed to obtain prompt

medical treatment for N.K. after he was located. However, the record contains no

evidence of any written policy or statute requiring emergency medical services to

be summoned under the circumstances. School officials determined that N.K. was

alert and not in visible physical distress. The decision whether to treat the situation

as a medical emergency was necessarily a judgment call, and therefore discretionary.

Finally, Appellants cite 702 KAR 5:030 as support for their position that the school district violated ministerial duties. The regulation contains various provisions regarding pupil transportation, including that the superintendent is responsible for the safe operation of the transportation program and that the principal must implement a system of adequate supervision for students as they enter and exit buses. However, none of these provisions dictate specific steps such as conducting a headcount or inspecting each bus seat. While the regulation mandates the existence of supervisory systems, the form and application of those systems remain discretionary. *James*, 95 S.W.3d at 906 ("The enactment of safety rules is a discretionary function for which the school employees cannot be held liable due to their qualified official immunity.").

That N.K. was left on the bus was deeply unfortunate. With the benefit of hindsight, the supervision protocols in place may appear insufficient. But the law does not allow liability to be imposed on school officials merely for imperfect discretionary decisions. *Id.* at 910 ("Applying such an unrealistic standard is not only unjust, [it is] unauthorized."). Appellees implemented school policies and made decisions within their discretionary authority. Appellants have identified no statute, regulation, or written policy that imposed an absolute, certain,

and imperative duty on these Appellees that they failed to perform.  As the party opposing summary judgment, Appellants were required to present affirmative evidence of a genuine issue of material fact.  They have not done so.  The circuit court properly concluded that Appellees were entitled to qualified official immunity.

## IV. CONCLUSION

For the foregoing reasons, we affirm the order of the Oldham Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James M. Gary
Louisville, Kentucky

BRIEF FOR APPELLEE:

William A. Hoback
Mark S. Fenzel
Louisville, Kentucky